Good afternoon, your honors. Brian Heberlig on behalf of Congressman Rick Renzi, who is in court today. Pursuant to the court's order, I'd like to defer five minutes of my time to the House of Representatives, and also reserve two minutes for rebuttal. The key question in this appeal is whether the allegations involve Congressman Renzi's protected legislative acts, and that's where I'd like to begin my argument. The Speech or Debate Clause, of course, protects more than literal speech or debate on the floor of the House. It covers all conduct within the legitimate legislative sphere, so it's important to examine the precise conduct at issue here. And the conduct at issue involves federal land exchange legislation. Congress has plenary power over federal land that includes the authority to trade federal land for private land. Because that type of legislation involves negotiations with private parties. Mr. Heberlig, do we have to draw a distinction in our application of the Supreme Court case law between actions that Mr. Renzi allegedly took after legislation was introduced versus actions that he took before legislation was introduced? No. The District Court made that distinction, but the Supreme Court has protected a number of legislative acts that occur before But it seems like the Supreme Court has repeatedly held that a promise to introduce a bill is not a legislative act, and contemplative future legislative acts are not legislative acts. So it seems that there is some sort of distinction in the Supreme Court case law. Well, that's right. A pure promise to engage in an act in the future is not protected. That's the Brewster case and the Helstowski case. But many legislative acts do occur before legislation is introduced in Congress. The whole, the Eastland case, for example, deals with legislative fact-finding of proposed or potential legislation, and even says pursuant to a committee hearing and a duly authorized subpoena for records. And we didn't have anything like that here. What we have is a congressman who was a member of the Natural Resources Committee who spoke with people about a bill not yet introduced, and to believe the allegations of the indictment, he allegedly solicited a bribe in promise for a future introduction of a land exchange bill. Why doesn't that squarely fall within the Supreme Court's Brewster decision? Because I think that that's not just what the indictment alleges. What the indictment alleges is that in his negotiations with these parties that were proposing draft bills to him, he required, he demanded in return for his support for the legislation that they amend their bills, that they include a particular piece of property in the bill itself. And that act in and of itself is a legislative act. Members all the time negotiate proposed legislation before it's introduced before the Congress. A part of the legislative process, and that's all that's required here, that the conduct be within the legislative sphere. I guess the question would be, if all this occurred prior to the actual introduction of the bill, is that incidental legislative acts, which the Supreme Court has said can be considered in a criminal prosecution without violating the speech or debate clause? Well, I think what the court has held that political activity is not protected by the act. No, the court has said specifically that it doesn't mean that no mention can ever be made of legislative acts. The question is whether or not in the context of a bribery prosecution, those legislative acts would be incidental. Well, but in the bribery cases like Brewster, for instance, the thing of value had no connection whatsoever to the legislation. It was a flat-out cash payment in return for a vote on a piece of legislation that was already pending. So there's no conceivable legislative purpose for the member accepting the bribe payment. That's very different than what we have here. The thing of value that's at issue in this case is the amendment of draft legislation. And it did have a facially valid legislative purpose. That's in the record. What Congressman Renzi conveyed to these private parties about their draft bills was, you need to include this piece of property because it has high environmental value to the United States government. It would conserve water in an environmentally sensitive area, and would help Fort Huachuca that was suffering from a water deficit. That is a facially valid legislative purpose. What the government wants this court to do and would have to do in a prosecution was go behind Congressman Renzi's actual words and acts and question the motivation behind his legislative act. And that is what the Supreme Court... Congressman Helstosky, that it's a hard distinction to make analytically, but where the bribe was solicited in exchange for a promise to introduce private bills, that the jury would be entitled to know what the reason was for the bribe, without regard to whether or not Congressman Helstosky actually later introduced the legislation. Isn't that what the Supreme Court told us? But again, Helstosky involved a thing of value utterly unrelated to the legislation, a cash payment. Here, in order to explore what even the thing of value was, the government has to explore legislative conduct, urging parties who approach the Congressman with draft bills in hand to amend their legislation. Is it that, or is it the fact that the government found evidence that the bribe solicitation was not as direct as it was in Helstosky? And that is, it was done through this undisclosed obligation between Sandlin and Renzi to pay $700,000 that was never disclosed to anyone? Well, that's the allegation. That's the allegation of why he was motivated to do what he did. But there's other evidence in the record in how they would actually prove what he said to these proponents of the bills, is he told them, amend the legislation because of the property at issue has environmental value. I guess the problem I'm having is I don't see the difference between the statement that is alleged to have been made, no Sandlin property, no bill, and pay me to introduce a private bill in order to adjust your immigration status. Well, because the Sandlin property, to the extent it was a thing of value to the Congressman, has two plausible reasons why it's valuable. There's a legislative purpose that he gave to these parties for why he wanted the land included in their bills. And that was a purpose well within the legislative domain. Well, the first person didn't get it, and so there was no bill. And then he tried with two other people, right? Well, there was a bill with the first person. When the first person did not come to terms with Sandlin, they acquired a different piece of property that conserved water on the upper San Pedro River, and Congressman Renzi introduced their bill twice. But as I understand the indictment, the criminal acts were complete once the solicitation, or again, no Sandlin property, no bill, was made without regard to whether or not, with regard to Company A, that bill was ever introduced. They don't have to prove whether the bill was introduced or not. I don't maintain that they do. Well, let's just take Company A, because I think it's a lot easier case. It's closer to Brewster and Helstosky, in my mind, because of the fact that there was no actual legislative action that ever followed with regard to Company A and the Sandlin property. Well, that's not, in fact, the case. The legislative action that followed was the draft bill that was negotiated between the parties was submitted by Congressman Renzi's office to the House Counsel's office to be formatted for introduction before Congress. And there are records in the, Grand Jury Exhibit's in the record, I'd point the court to Grand Jury Exhibit 20, that really highlights that what was negotiated here was the bill itself. So yes, the bill was not introduced before Congress, but there certainly was legislative steps taken toward its introduction. And it just did not ultimately get introduced. If the speech or debate clause applies to acts on the floor or those legislative acts that are inherent, i.e. committee hearings as in Eastland, you're asking us to extend the Supreme Court precedent further to cover actions that occur prior to the actual formal introduction of the bill, correct? Yes, but I don't think it's a great extension of existing authority. But didn't the Supreme Court answer that question in Brewster? I keep coming back to Brewster and Helstosky. I don't see how that's different. That wasn't what the court held in Brewster. That wasn't, it didn't matter whether, I mean the bill was pending in Brewster. So there really wasn't any analysis of whether the legislative act that was being worked on ultimately resulted in the introduction. But not in Helstosky. I mean, weren't there a series of private bills? I think they were introduced in Helstosky. And the court excluded evidence of the bills and the correspondence related to the bills. But said the prosecution could go forward. Yes, on that illegal compact, the core promise. And the difference here is that the core promise was not for something of value outside the legislation. The thing of value was an amendment to legislation. And legislation can't be enacted without these sorts of negotiations that occur prior to introduction in the House. You know, take, if this case involved exactly the same facts but there was no relationship between Renzi and Sandlin whatsoever, I think this court would agree that if the bill ultimately did not get introduced, Sandlin would not have a cause, excuse me, Ares would not have a cause of action against Renzi for purchasing the property and having the legislation fall through. Which really highlights what we're talking about here is the motivation behind Congressman Renzi directing these parties to include a particular piece of property in their legislation. Well, that's why I say I think it's a difficult concept to apply analytically because the Supreme Court speaks both of a prohibited inquiry into the motivation behind the actual introduction of the bill, but yet permits introduction of the motive for the solicitation of the bribe. And the problem we're having in this case is that the evidence is almost identical. Well, but the bribe in those cases, Brewster and Helstosky, had no conceivable legislative purpose. That's what the court held. The acceptance of money by a legislator not related to the bill could not possibly have a legislative purpose. Here, so it, I don't think the Supreme Court is saying that it's okay to solicit a bribe in connection with the introduction of a bill. I mean, you're asking us to find a direct nexus. But I think the court needs to look at the realities of modern legislation. I mean, many pieces of legislation benefit a member of Congress in some way. You know, take an example in the health care field. What if a member of Congress in negotiating an amendment to the health care bill directs the inclusion of a clause covering pre-existing conditions? And he has a family member with a pre-existing condition, and that would directly benefit him. That would be a thing of value to the congressman, but no one, I believe, would suggest that the congressman could be prosecuted for soliciting a thing of value because it's the content of the legislation that's at issue. And that's also squarely the case here. But in the limited time I have left, I'm happy to answer further questions about legislative act. Go ahead. There are other remedies here, even if the court does not side with us on legislative act, although we believe it clearly should. We've moved to dismiss the indictment for violations that occurred before the grand jury. If the court sides with us on the legislative act issue, it's not a close call. There are... Well, if, okay, let's say if, let's just say there's a number of acts that have been brought up. Let's say if a couple of them we think, okay, you're right. We still have to decide what test we're going to adopt in this circuit as to how it relates to the indictment, correct? That's correct. And you want us to accept the D.C. circuit case, the D.C. case? Well, in the grand jury context, we're actually requesting that you accept the 11th Circuit standard in the Swindoll case. And that case held that if legislative act evidence is presented to the grand jury in order to obtain an indictment, the indictment must be dismissed unless that evidence was irrelevant to the indictment. It goes well beyond a harmless error test. But in Swindoll, I think the 11th Circuit went out of its way to make clear that the conduct underlying the counts of the indictment that were dismissed, I mean, that was the whole central reason for the indictment. Here, we've got a whole lot of other conduct that's alleged in this indictment besides activities related to land exchange legislation. Well, there are two pieces to the indictment. There's the public corruption side, which is squarely deals with land exchange, and there's the insurance side. So I think what the court is asking is, would the presentation of legislative act evidence require dismissal of the entire indictment? And I think the answer is no. I think the answer could be yes. And I think it depends on how you define legislative act. If you define it – Legislative act are how you define the enterprise for purposes of the RICO count. Well, I think the RICO count is – I'm not sure I see the nexus on this issue. Our argument for why the entire indictment needs to be dismissed is based on the Helstosky case in the Third Circuit, that essentially the legislative act evidence so permeated the grand jury presentation that it could have inflamed the grand jury into indicting what was otherwise a very flimsy insurance fraud case. Well, again, I can see that in the context of the Swindle case. I'm having a harder time in the context of all of the criminal conduct that's alleged in this indictment that has very little to do with land exchange, but everything to do with obtaining money through a variety of unlawful means. Well, certainly for the public corruption, half of the indictment, I think the presentation of legislative act evidence to the grand jury would require dismissal of all of those counts, 1 to 27, the portion of the RICO count that's already been dismissed, and the tax count that followed. And a court that this court could look to that gave the same remedy was the Durenberger court where public corruption counts were dismissed because even though it was only one grand jury exhibit of hundreds, it was square legislative act evidence that the court held could not be deemed harmless. So you think that that taints the allegations with regard to the misrepresentations to insurance regulators on the embezzlement? Well, that's a different issue. And to get to that point, and we've argued the court should, but the court would have to conclude that the evidence so dominated the proceedings, so permeated the proceedings that the grand jurors could have been inflamed and voted to indict on insurance fraud as a result of the unconstitutional evidence of the other count cases. I think inherent in your answer is that we should treat a violation of the speech or debate clause similar to a Fourth Amendment violation where evidence is excluded and order Castigar-like remedies, which would require the district court presumably to hold a hearing and then try and run out every branch of the tree to find out what investigative leads were pursued and evidence introduced. And you're going to have to convince me why Castigar would even apply here. Sure. I will attempt to do that. The question is really what remedy is that, first of all, for the Castigar remedy to apply, the court must adopt the nondisclosure privilege aspect of the clause, which we think it should. But it never has been. You don't have any case that... Your court has not squarely so held. The D.C. Circuit did in the Rayburn case. But the reasoning that the D.C. Circuit applied, the purpose of the clause to preserve legislative independence and not to protect against the chilling of legislative speech that would occur if the executive could review legislative backed evidence, is squarely consistent with what this Court held in Miller. But even in the D.C. case, because it was a Rule 41 motion, they were dealing with the question of whether or not we can excise certain portions of the evidence seized pursuant to the warrant, but not all documents were ordered returned to Congressman Jefferson. Correct? That's correct. So why did the district court err here in essence following the same procedure? In other words, looking at specific exhibits that were introduced in the grand jury, deciding whether or not they were arguably covered by the speech or debate clause? Well, I think what the district court did here did not respect separation of powers in the way that this Court has said in the Miller case the clause is designed to protect. Really there was no remedy under the district court order because the government, of course, is precluded from introducing legislative backed evidence at trial. Well, there is a remedy, but the remedy comes later. And that is it comes in motions to suppress the evidence that are filed before trial. It comes in motions in limine and it by the speech or debate clause is sought to be introduced by the government. Well, but if that's all there is, then what this court would be authorizing is the executive branch to review any legislative act whatsoever during an investigation as long as they don't use it at trial. Not necessarily the executive branch. It might be the court in camera, as the D.C. Circuit suggested even in the Jefferson case might be appropriate. In the context of the wiretap, is that the court's? No, no, no. I'm thinking of specific items of grand jury exhibits that you say have tainted the grand jury because they're covered by the clause. Well, I mean, the problem here is the executive has already reviewed them. And if the conduct that occurred in this investigation, which, of course, involved secretly interviewing aides, procuring stolen documents from the congressman's office, using aides to surreptitiously record their conversations with him, if all that's permitted under the clause because it's simply investigation and doesn't involve introducing evidence against the member, I submit that that is fundamentally inconsistent with the separation of powers that the Supreme Court and this court in Miller has held that the clause is designed to protect. I see that I'm running close to my time. Yeah. You're almost out entirely. And if you wanted to cede some of your time to legislative counsel. I did want to cede five minutes to the House. Yeah. Why don't you sit down and let's hear from you. All right. And if possible, I'd love to hear this. I understand your request. And we'll give you some time. Good morning, Your Honor. I see there's 20 minutes on the clock. Do you want me to really, really talk fast? No. I tell you what we're going to do. Just set the clock for five minutes and then we'll see where we are at that point. Depends on how interesting you are. Yeah. Go ahead. You will be the judge of that as well. I appear today on behalf of the bipartisan leadership advisory group of the United States House of Representatives to express the House's concerns about the lower court's rulings on the speech or debate clause issues that were raised in this case, both with respect to the non-use component of that clause and with respect to the non-disclosure component of that clause. Well, I understand. I understand your concern. And in some things it's more difficult. But clearly it can't be your position that you want to insulate people from bribery, you know, committing bribery. That is not our position. That what? You? That is not the House's position. The House does not take the position that Mr. Renzi cannot be prosecuted. What the House is interested in is a vigorous, vital speech or debate clause that maintains the separation of powers between our branch, your branch, and the executive branch. It is fundamental to the tripartite separation of powers of government in this country to have a vital speech or debate clause. That is why the House is here. So if he were to be prosecuted, your concern then goes to the things that essentially sort of the fruit of the poisonous tree type of behavior that goes on? No. I would say there are two principal concerns that the House has at this point. One is that the lower court took an exceedingly narrow view of what constitutes legislative activity with respect to some of the things that Mr. Hebelding discussed, these conversations, these discussions, these negotiations that go on back and forth. That I think, that view I think is inconsistent with the Supreme Court's repeated mandate that this clause be construed broadly. I think it is, quite frankly, reflects a lack of understanding of how the legislative process actually works. In a representative democracy like ours, there will always be interplay between the legislators and the citizens. It is appropriate. We should, we should relish the fact that we have that. Because of those interplays, some of those activities will necessarily be protected as to the members. And the kinds of activities that went on here where you go back and forth, in this case, agreed, it is a, it is a unusual kind of legislation that benefits one particular party or negotiation. But it is no different than a committee and members of a committee sitting down with the pharmaceutical industry and talking about, what will you support in health care legislation? We need you on board. Let's talk about what we can do. That sort of interplay between the legislators and the citizens goes on every single day. Much of it is forward-looking, to be sure. If I could turn to the second concern we have, and that is with respect to the lower court's utter dismissal of the nondisclosure component of this clause, which, again, is something the House takes very seriously, because that gets into whether members have to respond to subpoenas, whether they have to produce documents, other forms of compulsion, such as seizure of their records, or, as in this case, seizure of conversations that they have chosen not to make public. The view that there is no nondisclosure component, no nondisclosure protection provided by the the clause itself. They shall not be questioned in any other place. Cannot be squared with the holding in Gravel that Senator Gravel's aid could not be questioned by a grand jury regarding the senator's legislative activities. Cannot be squared with this Court's holding in Miller that a former congressman, after he had left the House, could not be questioned about sources of information that he had obtained with respect to a matter that he had placed in the congressional record, and certainly that cannot be squared with a long line of D.C. Circuit cases, most recently the Rayburn case. The D.C. Circuit, of course, is the circuit where most of the nondisclosure law is developed for obvious reasons. That's where Congress resides. That's where it does most of its legislative activities. So if you were the judge in this case, what would be left? In terms of? What, you know, what would you have, you know, what would you have suppressed or what would you have eliminated? So what evidence would the prosecutor have left after? Well, certainly I think the wiretap evidence, the Title III wiretap evidence would need to be suppressed. And perhaps the fruits, whatever it is that Title III provides by way of a remedy in that regard. On the nondisclosure side, that is stuff that they took from him. It is no different than the seizure of the records that took place in the Jefferson case. You're not answering Judge Callahan's question. She wants to know what's left. We understand what's out. Okay. She was asking about what I would suppress, I think. Well, there are two sides. Yeah. What would be left? Well, what would be left in the case is the movement of money, for example, from Mr. Renzi to Mr. Sandlin. I believe there's a fair amount of evidence about that. There may have been evidence of lack of disclosure of his interest in the Sandlin property, for example. Those kinds of things. Not the actual, what would be out would be the actual legislative activities, the back and forth. Everything else would be in. What about the statement, no Sandlin property, no bill? That occurred, as I understand it, and obviously what we have at this point are statements in the grand jury. Yeah. All we have is the allegations of the indictment. From our perspective, I understand the Court's concern with Helstosky and Brewster. From our perspective, however, that is subject to a number of conceivable interpretations as to what that means. Well, that's for the jury to decide. The question is, you're sitting as the trial judge. Does that piece of evidence come in or is it out because it's protected by the speech or debate court? Well, with all due respect, that is an issue to be decided by the judge, not the jury, as to whether it is legislative. Well, I'm asking you if you're the judge, are you going to let it in or not? No, because it is part of a conversation that was part of a legislative process. It is a back and forth. As a judge, how do you square that with what the Supreme Court permitted in Brewster and Helstosky? Because that is no different from saying, I will sponsor a private bill to improve your immigration status if you pay me money. I think it is different, Your Honor, for many of the reasons Mr. Heavily described, which is that in Brewster, in Helstosky, you were talking about a straight-up cash payment. The essential holding of Brewster was that that receipt of money by the member could not be a legislative act. It could not be a legislative act. How about a bribe? What you're saying is a more clever bribe could be a legislative act. But if you just have the straight-out money, then that's an easy one. So you can go with that. I'm saying that's all that Brewster and Helstosky have held at this point. I'm also saying that it's very dangerous to go around labeling. Mr. Renzi is only accused of a crime at this point. It's very easy to say a bribe is not protective legislative activity. Extortion is not protective legislative activity. All right. But what I'm hearing you say is a lot of what people do, the public, would think were bribes or extortion, but that our legislators don't? It's all the wheeling and dealing that goes on? No. Again, Your Honor, I'm not suggesting that. What I'm suggesting is that in this case, the particular facts of this case suggest that this was part of a legislative activity. It may have been for an illicit motive. It may have been for a legitimate motive. It may have been for a mixed motive, for all I know. The fact is you get the right... So I guess the speech and debate, what it is, is you're saying it's both a sword and a shield, if that's the way that we have to look at it, because... I wouldn't characterize it that way, Your Honor. I think what it is, is it is a shield, and in some instances, as the Supreme Court has recognized, there will be costs associated with that shield. In Eastland in particular, and here in Houskoski, the Supreme Court recognized there may be cases in which a defamer will not be brought to justice because of the speech or debate clause. There may be instances where criminal activity is not able to be prosecuted because of the speech or debate clause. It is a cost associated with that clause, just as there are costs associated with the Fifth Amendment, the Fourth Amendment, the Eighth Amendment. Right. So the murderer goes free because the confession is suppressed, and so we accept that, and you're asking us to take a similar approach here. I'm asking you to follow the Supreme Court, which has already taken that approach, Your Honor. Well, I mean, the problem I'm having is taking the general statements that you are quoting to us, but then applying them specifically to the allegations that are before us. And the allegation here is that that statement was an indirect solicitation of a bribe, rather than a direct solicitation of a bribe. And the resolution of this case under Brewster and Houskoski can't turn on the sophistication of the manner in which the solicitation is If you concede that had Sandlin said, or excuse me, Renzi said, I will not sponsor this bill unless someone pays me $700,000 to include the Sandlin property, that would be a prosecutable statement, an admissible statement. Then I'm not sure it advances our no Sandlin bill, no property, or no property, no bill, that that is protected. Even if you carved out that particular statement, and that's a whole other issue of whether legislative acts can be chopped up into little pieces, but let's assume that it could, and you could carve out that statement under Brewster or Houskoski and let it be used as evidence, there still remains the question of the other back and forth, the conversations, the negotiations, the context in which that occurred is clearly legislative and, in our view, would have to be excluded. Okay. I think we understand your position. I've given you about ten minutes instead of five. All right. And I appreciate the question. Mr. Kircher, if you have a summation, go right ahead. I do. I do have, if you wouldn't mind. I want to emphasize to the Court that legislative I particularly want to urge the Court to not let the fact that these issues have arisen in a criminal context bias its determination here. There is one constitutional privilege, there is one legislative standard for what constitutes legislative activities, and that standard and that principle applies regardless of the context in which it arises. Thank you very much for your indulgence. Mr. Kircher, let me also say on behalf of the Court that we appreciate the input from the House on this matter, and we understand the importance that the House places on this question. Thank you very much. Thank you. All right. Let's hear from the government. Thank you, Your Honor. May it please the Court. My name is Andrew Lovechuck. I'm here from the Department of Justice for the United States. With me at council table is Assistant U.S. Attorney Gary Restaino from the District of Arizona. Your Honor, we, too, believe that the case is controlled by Brewster. The main point I want to cover this morning is that the conduct alleged here, where we're talking about hundreds of thousands of dollars of private investors' money, ultimately flowed into Congressman Renzi's pockets and those of his co-conspirator Jim Salmon in return for his promise to support legislation. That promise, that corrupt compact, is not protected by the Speech or Debate Clause. It is Congressman Renzi's burden to make that showing, and he has not. Well, is it, you know, we're talking about before and after the legislation is introduced. And, you know, I think that, you know, to be fair, if we accept your position, is it that any negotiations before the actual legislation is not introduced, is that outside the speech and debate? One has to look at the Because in drawing this line, I mean, arguably you're asking us to conclude that. I don't think we're going that far. I think we're saying you have to look at the specifics of the exchange, the communications between the member and the outsiders. Those specifics are laid out in some detail in paragraph 25 of the Second Superseding Indictment. Well, but I get the sense a lot of negotiations aren't pretty. You know, it's the making of sausage, and there's a reason that, you know, we can't, you know, penetrate all of that. Here we've talked about why isn't this, you know, because it's why isn't it just a bribe like in Brewster? We're talking about that. But, you know, at some point it gets fuzzier. It definitely does, Your Honor. And I guess the question would be at what point do you say that do you extend coverage to legit you say that a conversation with a third-party lobbyist who has just walked into your office is akin to a speech or debate on the floor of the House. And in our view, there are no cases that have correctly taken the speech or debate coverage that far. Well, because God forbid that people would get political about this. Well, one can be political, but what we've alleged is not politics. What the Second Superseding Indictment alleges is a prima facie case of extortion and solicitation of bribery. And that's exactly what was alleged in Brewster. We would not, there were, as Judge Tallman pointed out, there are two schemes here alleged in connection with the land exchange. The first is with Company A, which is Resolution Copper Corporation. The second and later one, Investment Group B, which is what we'll call the Ares Group. As to the first one, legislation was ultimately introduced down the road from the negotiations we would put in, but we wouldn't get nearly that far. Our time frame is January through March, and we're talking about a set of specific conversations, a conversation with Resolution Copper and its lobbyists out in Phoenix in January of 2005, another conversation in March of, I'm sorry, February of 2005 in Washington, ultimately leading up to the no Sanlin property, no bill conversation. Well, let's say if he had said that, but he didn't have that personal interest involved. If he said no Sanlin, no bill, and he didn't have the personal, I'm changing the facts, obviously, but that was just his view of it, and he's playing hardball and saying, if you want this, then you've got to do that. Would that be subject to speech and debate? In a vacuum, no. I mean, in other words, without more, our position is that that conversation is not subject to speech or debate. And I appreciate the Court's giving me that hypothetical, but the fundamental difference here is bribery and the prima facie statement of that very interest that's pointed out. And Brewster goes on at some considerable length about the crime of bribery, and essentially it is toxic to the legislative process, it is toxic to good government, and in fact undercuts legislative independence, which we certainly agree, we have no quarrel with the Council for the House of Representatives, that preservation of legislative independence is key. But Brewster was very strong and very clear that the inquiry into the purpose of a bribe doesn't draw into question the legislative acts of the defendant member of Congress. The corrupt compact is subject to proof, and we would argue that's all that we have alleged in the indictment. The indictment very sparingly alleges that there was a nondisclosure, there was an outright false statement made to Resolution Copper about the relationship between Sanlin and Renzi, and ultimately Resolution Copper pulls out. Now, as to that second deal, the deal with the Ares Group that the Court mentioned, that's one where legislation was never introduced. Legislation never made it to the floor. And again, what we're talking about is the initial stages and the allegation ultimately that Ares Group comes in and they're saying, you know, we're going to buy this property, and you put this in your bill. And I think another point the Court made is it doesn't matter how sophisticated you are in obtaining your benefit. A benefit can be a direct cash payment. And indeed, if there had been, if Renzi had been ham-handed enough, Congressman Renzi to say to Mr. Hegner, you know, I'll do what you want. I would like a bag of $20 bills delivered to my house tonight. We wouldn't be here. So the question is, and this is really, listening to Mr. Heberlig, I think were we part company, which is if he's sophisticated enough to somehow tie the payoff, somehow tie the quid pro quo to legislation, then we go from a completely unprotected, straight old bag of cash to something that becomes a legislative act. And whatever Brewster means, it certainly doesn't mean that. And in fact, Brewster recognized that problem. And I simply said, we wouldn't think it wise out of an abundance of caution to doubling the benefits of a legislative act. The question is, how do we ensure legislative independence to extend the privilege beyond its scope? And specifically, you don't include all things in any way connected to the legislative process. And this is on page 516 of the opinion. We have no doubt that given such a sweeping reading, there are few activities which a legislator who engages, that he would somehow be unable to relate to the legislative process. A legislative act is something more. And given the, what was essentially the policy concerns with Brewster about the toxic nature of the payment of bribes and bribes in the legislative sphere, the court firmly stated that it would not go so far as to protect the act of agreeing to a bribe. Well, now what about if I take you to, if some or all of the, if the court were to decide some or all of the challenge evidence presented at the grand jury was legislative act evidence, what standard are you encouraging us to, what standard applies in terms of assessing the indictment? As to that second claim, the standard would be really what the Supreme Court did in Johnson, which is you, well, let me go back. The, in terms of was, there are two, there is a court of appeals decision, for example, in the Third Circuit, which has said where speech or debate so infected the grand jury process that one simply cannot proceed. But the large majority of cases have said that you treat it, you treat an indictment the same way you do in any other case, which is grand jury proceedings have a presumption of regularity. Grand juries are exposed fairly routinely to evidence that would otherwise be inadmissible. But once a grand jury has returned a valid charge, that that's really beyond review by a court. And most recently in the Jefferson decision in the Fourth Circuit, they took that view. So you don't, so Swindle, you don't? No, I would distinguish Swindle the same way Judge Tallman distinguished Swindle, which is that in Swindle what we were talking about is the proof of the congressman's, in that case, membership on a particular committee was essential to establish mens rea for the counts in the indictment. And so there, in Swindle, you had a very particular fact scenario where the legislative act evidence, which the Court found to have been introduced, was just essential to the charges themselves. Here, I think the district court did a very careful job, both Magistrate Judge Velasco and Judge Berry, in reviewing his work, did a very careful job of saying which fell on what side of the line. And I think, as Judge Berry said several times in his opinions, Magistrate Judge drew the line correctly, in that he found, for example, certain grand jury exhibits were not protected, but the vast majority of grand, were protected by the speech or debate clause, but the vast majority of what was put into the grand jury was not problematic at all. And so, given that, there was certainly no basis for a dismissal of the indictment, particularly where, as here, both Magistrate Judge Velasco and Judge Berry concluded the government will not need evidence of legislative acts to prove its case. And, again, that is what, if one runs through the overt acts in the indictment, which is probably the quickest and easiest way to get a handle on this, there are no acts of legislative acts or acts of legislation alleged there. It is straight extortion, extortion being the flip side of bribery, bribery being, give me some money and I'll take some action. Extortion is, give me some money or you won't get any action. And that's what the heart of the land exchange counts is. And so we don't, we simply don't believe that they are, what we've alleged in the indictment is in any way covered by the speech or debate clause. But also, as Judge Berry said, and I think, again, as Judge Tolman alluded, and this is on page 12 of the excerpts of record, one can, prior to the trial, file motions in limine. If one has quarrels with specific things that Mr. Aries might have testified to in the grand jury or Mr. Hegner from Resolution and Copper, that can all be hammered out very easily in the motion in limine process. So what, in terms of that, what does this court have jurisdiction to decide? Well, the court has jurisdiction over, certainly that sort of issue, motions in limine or it's not something that's covered under the collateral order doctrine. This court has the power to answer the ultimate question in the case, jurisdiction, to answer whether the indictment should be dismissed because it relies on legislative acts or because the grand jury process was. What about the motion to suppress? The motion to suppress was, well, there were motions to suppress on a variety of grounds. It was referring specifically to the Title III. As a practical matter, Title III is already off the table, and I will say as to the evidence, the conversations which are included in the sealed appendix or sealed excerpts of record, they have never been introduced anywhere. They have not been shown to the grand jury, either grand jury. They will not be used. But aren't they appealing their motion to suppress from below? They're appealing a motion to suppress the Title III, and they're not appealing the motion. They're appealing. Do we have jurisdiction to do that right now? They're claiming that the, you'd have to jump through several hoops to obtain jurisdiction. They're claiming that if you accept the D.C. Circuit's Rayburn decision, which we disagree with for all of the reasons stated in the brief, then the Title III, we were exposed to legislative act evidence, and that exposure so tainted us that we therefore, the whole prosecution is infected with a speech or debate violation. If you jump through all those hoops, you possibly have jurisdiction. In our view, if one rejects quite properly the view that there is this expansive nondisclosure provision to the clause that the D.C. Circuit found, you don't have to reach it and probably shouldn't reach it. And, but, you know, the attack on the Title III really comes down to whether this Court accepts Rayburn or not. And we would urge the Court to look at Judge Henderson's concurrence in Rayburn, where she cogently sets forth all of the reasons that Rayburn is simply wrong in reading a, this nondisclosure provision into the clause. I will say also about Rayburn, in Rayburn they mention, I think the word compelled is used seven times, at least in the majority opinion. So you're talking about compulsion there. So it certainly wouldn't apply to voluntary interviews with aides. It certainly wouldn't apply to anything which one comes across through any other means. I'd also argue even as to Title III, Title III is you're listening in, but you're not compelling someone to do something. You're not giving them a subpoena or otherwise forcing questioning. The other issue about Rayburn, which I think the Court should recognize, is that the speech or debate privilege was designed, as Judge Henderson said, to protect robust, open debate, to protect the ability of members of Congress to go on the floor and say controversial things, introduce controversial legislation, and not be subject to being the modern equivalent, whatever that would be, of being locked in the Tower of London. But here, by sort of creating this nondisclosure side, you are almost creating two classes of speech or debate material. For example, a member of Congress can, on the floor of the House, give a speech which is completely open to the public, broadcast on C-SPAN. We cannot play or tape of the C-SPAN video in evidence, even though there's nothing private or confidential about that communication. In fact, it's broadcast to the world. And so to suddenly say, to import this nondisclosure component and say that a sort of castigar protections then flow from that is simply inconsistent with the purposes of the clause. And I think Judge Henderson recognized that in her concurrence as well. And so you'd have to, if you were to apply Braeburn in that way, you'd have to really do two, create two classes or recognize two classes of speech or debate material, the sort which I just described, which is open to the public, and then sort of figure out which category falls into this so-called nondisclosure side of the speech or debate clause. And that's simply, there's no textual support in the clause for that, and there's no other case which I can think of which has ever suggested that one should be required to do that. And so what, listening again to my brother from the House of Representatives, it strikes me that at bottom what he's doing is re-arguing the dissent, dissenting point from Brewster. I mean, Justice Brennan very articulately argued that, look, if you're going to put on evidence of a bribe in this particular, in this particular manner, you are necessarily going to have to put in proof of at least talk about legislation. That view was rejected in 1972, and the Court has never saw fit to reconsider that. And the Court essentially said the speech or debate clause doesn't prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions. That's what we have here, illegal conduct with some nexus to legislative functions, and the government can and will put on a very spare, streamlined focusing on exactly the corrupt promise, the no sale on property, no bill, the free pass through Congress, and the money going into the legislator's pocket. And in fact, that's really the biggest gap here is that there's no case which either the House or the defense sites which suggests that, or which involves money going to the congressman, private money going to a congressman or a congresswoman and their co-conspirator, which was what you have here. I see my time is up. I'm happy to rely on our brief on the racketeering issue. I have one question on that. The indictment contains a definition of the enterprise, but how would you articulate your theory of the enterprise? The enterprise is Congressman Renzi's real estate agency, initially called Renzi and Company, later renamed Patriot Insurance. And the enterprise is involved in what are essentially broadly three racketeering acts. The first two, or the first and last, I should say, are the land transactions that we've been talking about. And essentially, the insurance agent, I'm sorry, the first and last are plain old insurance fraud. The first being that Congressman Renzi looted his insurance agency back in 2001 and 2002 during his first run for Congress, took essentially $400,000 of protected escrow money, money which was in a trust account, and moved it through a very unsophisticated scheme into his campaign account and campaigned with it. Then got caught up and ultimately borrowed money from Jim Sandlin, his father, and others to repay it quickly to keep his insurance company afloat once he was elected. The third one is a later insurance scheme which we actually tried Mr. Renzi's co-defendant on in Arizona last summer, and he was convicted, was another insurance scheme where they were just, again, dipping into premium money when they couldn't. Judge Burry's issue and Judge Velasco's issue was with Racketeering Act No. 2, and they basically said, you know, you're talking there about this land exchange and it's simply not related to Racketeering Acts 1 and 3. We think it is in several ways, mostly because money was, proceeds of the scheme were laundered through the insurance agency, which he basically treated as his piggy bank. That's the crux of the RICO account. Insurance agency equals Renzi's account. Funds were laundered through there, and in fact, one of the benefits of the fraud, the shakedown of the Ares Group where money was received, was that he was able to pay off a very big loan that his insurance agency, big note that his insurance agency owed. That, in our view, was sufficient access, particularly at the indictment stage. We're talking here about simply an opportunity to put on our evidence, and we think it's, the indictment is sufficient. We believe we can prove it, but that's really a separate issue, and I think Judge Berry, with all due respect, might have jumped to the proof stage without giving us an opportunity to get there. Okay. Thank you very much. Thank you, Your Honor. I will give Mr. Halbering some rebuttal time. I'll allow the government to go around. I'll give you three minutes. Three minutes. Yeah. Thank you very much. I will be brief. I want to come back to this legislative act point. I think what the government has articulated is as long as you label it bribery, it can be prosecuted irrespective of the speech or debate clause, and that cannot square with what the Supreme Court has held. I would point the Court to the Eastland decision that occurred after Brewster, and the Supreme Court held in Eastland that if the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the clause, then the clause simply would not provide the protection historically undergirding it. This Court still has to examine whether directing land exchange parties in this context to amend their legislation is a legislative act. We submit that it necessarily is, in addition to the reasons that the House stated, and once you reach that conclusion, you can't examine the motivation behind it. An executive cannot prosecute it. Labeling it bribery, that's not what the Supreme Court held in Brewster. You have to examine the facts of those cases. You have to examine the facts of Elstovsky. But we still have to determine whether these were valid legislative acts, right? Yes, you do. Yes, you do. And so the question is, prior to the introduction of legislation, is sitting across the table with parties in this context and hammering out the terms of their legislation within the legitimate legislative sphere. And that's the test under Miller, and it's a two-part test. One, does it involve proposed legislation within Congress's jurisdiction? Obviously it does. It's Congress's plenary power. And two, is the conduct integral to the deliberations of the House in considering legislation? And we submit that it absolutely is. You cannot enact legislation if you don't have these types of negotiations prior to the introduction of the bill. And what's interesting is the district court held that had the bill been introduced already, then these exact same negotiations would have been protected by the clause. And that is illogical. But doesn't that reflect the Supreme Court's distinction between future legislative acts and acts that are taken after a bill is pending? I don't think so. Because you could still articulate an argument that, yes, the bill is pending, but the same conduct was still promising to vote for that bill in the future. It doesn't make sense to say that once the bill is introduced, the exact same conduct is covered. It should have been covered before the bill was introduced, because there's no artificial line in the Supreme Court precedent that the speech or debate clause kicks in only after a bill is pending before Congress. Very briefly on the RICO account, I would like to address that. The district court held that the government had not satisfied the through element of RICO, that Congressman Renzi had not conducted the affairs of patriot insurance through a pattern of racketeering activity with respect to Racketeering Act 2, which was the same scheme alleged in the first part of the indictment. But as I understand the theory as charged in the indictment, the insurance agency was the vehicle through which the money was laundered. And in that regard, the laundering of the $700,000, which came first in $200,000 and then the second transfer for 533, is no different from all the other transfers that are alleged in the indictment where money was funneled through the accounts of the insurance agency and used for all manner of things, according to the allegations. Well, it's not concealment money laundering that's alleged in those predicate acts. It's engaging in financial transactions with the proceeds as specified on lawful activity. So the fact that it was this patriot insurance accounts is really irrelevant. It could have been any accounts. Which is why I'm having a hard time understanding why the district court drew a distinction between using the accounts to launder the proceeds of specified on lawful activity from extortion and bribery and using those same accounts to launder embezzlement, misappropriation of insurance proceeds, the various. Well, the district court looked to the test that this court's articulated in Scotto and said that obviously it wasn't the predicate acts weren't committed because of his position as an officer of patriot insurance. So the only way the element is met is if the. Well, do we know that? I thought one of the allegations was that some of the money was used to pay off a loan that patriot insurance company owed to somebody. I don't know if it was another insurance company or. Well, but the analysis is whether he could have engaged in the alleged acts of extortion, whether his role as someone involved with patriot insurance facilitated his ability to commit extortion. The indictment alleges that the way he engaged in those acts of extortion was as a member of Congress. And what the district court essentially held is that the mere deposit of the proceeds of a completely unrelated scheme into the bank accounts of the enterprise is not enough to meet the nexus element. But that's why I ask government counsel how you define the term enterprise, because it makes a difference here. All of these acts that are alleged are predicate RICO acts, which if the jury finds can form a pattern of racketeering activity through which the insurance agency was operated. And I just don't understand why you would carve out these particular predicate acts, which appear no different than any of the other predicate. Well, this court has to hold that the acts of extortion were sufficiently related to the conduct of the affairs of the enterprise to meet the nexus requirement. And the indictment is focused on his conduct as a member of Congress, that the extortion was committed for a personal purpose to satisfy his own personal financial needs. But the allegations are that money was laundered all the time through the accounts of the insurance agency and covered campaign obligations, personal expenditures of Mr. Renzi, obligations of the insurance agency. I mean, as the government said, it was his piggy bank. I understand you vehemently disagree with the government's characterization. With their allegations. But that's not the predicate acts of money laundering that are alleged in the RICO count are not concealment acts of money laundering. They're simply a tie-on to the alleged extortion. They're any financial transaction that involved the proceeds of the specified lawful activity. But we can't, I mean, looking at the dismissal of the Racketeering Act II under the indictment, we have to look at the indictment as it is framed. We can't go behind the face of the indictment and weigh the evidence or try and determine what the real motivation was. And, again, I'm having a hard time understanding why the district court thought that at this stage of the case, you're certainly free to make a Rule 29 motion at trial, but I just don't see as a matter of pleading why the district court's decision was correct. Well, you know, we respectfully disagree for the reasons articulated in our brief. All right. Well, we'll puzzle through it and give you an answer. Thank you. All right. The case just argued is submitted. Why don't we take a 10-minute recess, and we'll come back and hear argument in the last case.
judges: Conlon, Tallman, Callahan